GEORGE ANSON, Appellant, v. W. FOBES et al., Appellees.

**TELEGRAPHS AND TELEPHONES:** Private Wires. One who has acquired from a telephone company the right to have his private telephone wire carried upon the company's poles, may not

complain of a change in the location of the wire on the poles, so long as the substantial efficiency of the wire is not impaired.

*Appeal from Carroll District Court.*—E. G. ALBERT, Judge.

OCTOBER 18, 1918.

THE material facts, so far as discoverable from the printed record, are stated in the opinion. There was a verdict for the defendant, and from the judgment entered thereon, the plaintiff appeals.—*Affirmed.*

*Brown McCrary,* for appellant.

*Lee & Robb,* for appellees.

WEAVER, J.—The pleadings in this case are obscure, and the facts disclosed by the abstract of testimony are scarcely less so. Calling to our aid the charge of the court, and the apparent concessions of counsel on both sides in the course of their argument, the following essential facts are found, to a reasonable certainty. The petition is in the following words:

"For cause of action, plaintiff states: That he owned and was in peaceable possession of the right and wire located upon what is known as the North Coon Telephone Company, running out of Glidden, Iowa, north to plaintiff's farm. That the defendant, the North Coon Telephone Company, does business under said name, as herein alleged, that said defendant, W. Fobes, and said North Coon Telephone Company did in 1915, forcibly and without power or right, tear down, destroy and convert to their own use the wire and line right of this plaintiff to his great damage of $150, no part of which has been paid. Wherefore plaintiff prays judgment for $150."

The answer admits that plaintiff "owns a wire attached to the poles of the North Coon Telephone Company," and denies all other allegations of the petition.

From an examination of the entire record, as above indicated, there is shown a situation about as follows:   Some
years before this action was begun, the plaintiff, owning a
farm several miles from the town of Glidden, desired to
secure telephone connection with that place.   For a part of
the distance, the North Coon Telephone Company, an unincorporated association of farmers, had constructed and was
maintaining a line of poles, on which were strung several
wires.   Plaintiff applied to the company for leave to attach
his wire to the company's poles; and a written contract was
entered into, by which, in consideration of plaintiff's undertaking to attach certain cross-arms to the poles, and pay
his pro rata share of the expense incurred for keeping the
poles and cross-arms in repair, the company agreed to give
him "a one-line right on their poles."   Upon some of the
cross-arms were five pegs, and upon others, six pegs; and
plaintiff's wire, as first placed, was attached to the "inside
peg," by which, we understand, is meant the peg nearest the
middle of the highway.   At a later date, he or his tenant
disconnected his phone from this line, and, for a period of
three years, more or less, maintained connection with Glidden over another line; but his wire on defendant's pole was
not removed by him.   Still later, when he contemplated
"changing back" to the old connection, he says he examined
his wire on these poles, and it was in place and in order.
Shortly before this action was begun, he says he discovered
that his line "would not work;" and, on examination, found
that the wire had been cut, near the point where the connection with defendant's line of poles had been made, and
that there was a new wire on the pegs which had before been
occupied by his wire.   He nowhere says that his wire was
not on the poles; but, taking his whole story together, in
the light of the entire record, so far as any light can be derived from it, the whole trouble seems to be, not that this
wire, which he had not used for three years, had been taken

down or destroyed, or that it had been converted to the use
of other persons, but that its location on the poles had
been changed to another line of pegs; and it is his sacred
right to the perpetual possession and use of the original
pegs which the courts have been called upon to vindicate;
though of all this, no suggestion is found in the pleadings.
The only evidence of damages sustained is the plaintiff's
statement that the "value of the three miles of the 'right'
with the line of wire is $75, and the value of it from the
farm is $150." But the defendants do not deny his right
to maintain a line on their poles, and we think it must be
said that there was an utter failure of proof of any sub-
stantial injury to the defendant, to his wire, or to his right
to maintain the same on defendant's poles. The court,
however, did charge the jury that, if they found that de-
fendants had removed the wire from the pole or destroyed
it, plaintiff should have verdict for its value; but, if they
found that the wire was still on the poles, and, so far as
anything defendants may have done was concerned, was
ready for plaintiff's use, then he could not recover. This
was as favorable to plaintiff as he could possibly ask,
under the issues; and upon that question, the jury found
against him.

Plaintiff's claim of right to recover for what counsel
call the "invasion" of his right—by which we assume he
means the changing of the location of the wire on the pegs
without his consent—was not submitted to the jury; and,
as there was no evidence that plaintiff sustained any dam-
age by such alleged invasion of his right, the error in refus-
ing to submit it is without prejudice. But we think there
was no error. Plaintiff did not own and does not claim to
own the poles or the line of pegs to which his line was at-
tached, but insists that he acquired an easement therein,
and that this easement has been wrongfully interfered with,
and that this gives him a right of recovery. But his con-

tract gave him no easement, in any proper sense of the word; or, if we grant his right to an easement, he still has it, unimpaired. Defendants did, upon certain considerations, grant him a "one-line right" on the poles of the defendant company. In other words, he acquired the right to have his wire carried on or supported on defendant's poles; but there was no grant of any particular or specified line of pegs, and, so long as his wire was maintained on those poles, ready for his use whenever he saw fit to connect it with his phone, his "one-line right" is not lessened or destroyed; or, to use the word which his counsel seems to prefer, there is no "invasion" of his so-called easement. The unreasonableness of plaintiff's claim is too evident to admit of much discussion. Having acquired the right, and constructed his line, he saw fit to abandon—at least, to suspend—the use of it for three years; and if, meanwhile, the defendants found it a matter of convenience, in the care of their telephone system, to change the location of the unused wire to another line of pegs, or if, in adjusting their poles and cross-arms to accommodate an increase in the number of wires carried, or for any other reason, they made such change, without any substantial interference with the efficiency of the wire when properly connected, they were, in our judgment, entirely within their rights in so doing.

Assuming, as we must, under the charge of the court, that the jury not only found against the plaintiff on the claim that his wire had been taken away or destroyed, but found, as well, that his wire "is still on the poles, and, so far as anything the defendants may have done, is ready for his use," every fact upon which a recovery of damages could be sustained is conclusively negatived, and there is nothing in the record of which he can justly complain. The judgment appealed from is, therefore,—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.